IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DANIEL BELL *et al.*,          *

   Plaintiffs                 *

v.                              *

                                            CIVIL NO. JKB-18-0744

CSX TRANSPORTATION, INC.,       *

   Defendant                  *

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

### *I. Background*

Pending before the Court are two motions: (1) Defendant CSX Transportation, Inc.'s ("CSXT") Motion for Summary Judgment, to Stay Litigation Pending Arbitration, and/or to Dismiss (ECF No. 15), and (2) Plaintiffs' Motion for Leave to Amend Their Complaint (ECF No. 20). The motions are fully briefed (ECF Nos. 23, 28, 29, 30) and are ripe for decision. No hearing is necessary. Local Rule 105.6 (D. Md. 2018).

The Court previously granted in part CSXT's motion when the Court stayed further proceedings in the case pending completion of Plaintiffs' arbitration claims under the Railway Labor Act. (Order Nov. 19, 2018, ECF No. 40.) In making that ruling, the Court noted the stay would not prevent the Court from ruling on the two motions that had become ripe prior to the stay. (*Id.* at 1 n.1; *see also* Order Mar. 19, 2019, at 1 n.1 (ECF No. 49) (denying motion for reconsideration of stay).) Now, without contradiction to the stay as previously limited, the Court rules on other portions of CSXT's motion and all of Plaintiffs' motion. No hearing is necessary. Local Rule 105.6 (D. Md. 2018).

## II. CSXT's Motion

### A. Motion for Summary Judgment

#### 1. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

#### 2. Analysis

This case is premised upon alleged violations by CSXT of the Family and Medical Leave Act ("FMLA"), codified at 29 U.S.C. §§ 2601-2654. It is undisputed that CSXT operates 24 hours

per day, seven days a week, 52 weeks a year. Plaintiffs are or were working in CSXT's Train & Engine ("T&E") service as conductors, engineers, trainmen, and yardmen. CSXT explains how T&E staffing works:

> Many T&E employees are assigned to pools that are responsible for operating trains between two or more locations, one of which is the employee's home terminal and another of which is the employee's away-from-home terminal. Employees assigned to a pool are placed on a rotating list or board based on the employee's tie-up time—*i.e.*, when he returned to the home terminal. When a train is ready for departure, the employee at the top of the board is called to work. Employees who have just completed service are placed at the bottom of the board.

(John Johnson Decl. ¶ 3, Def.'s Mot. Summ. J. Ex. B, ECF No. 15-11.) Federal law places restrictions on the length of time an employee who operates a train can work; thus, T&E employees can be on duty for no more than twelve hours, and they must have at least ten consecutive hours of rest between on-duty periods. (*Id.* ¶ 4.) As a result, when a T&E employee arrives at the away-from-home terminal, he often stays overnight for the federally-mandated rest period and is then called to operate a train back to his home terminal sometime later. (*Id.*) CSXT also describes the process by which employees take off from work:

> An employee might not be available for work because of illness, vacation, jury duty, or some other reason. In that case, the employee notifies the railroad that he is unavailable—a process known as "marking off" or "laying off." There are several different ways that an employee can mark off—he can call CSXT's Crew Management department; dial an interactive voice recording system; or use a platform known as CrewLife that can be accessed by computer or cell phone. Employees who mark off must provide a reason for doing so.
>
> When an employee marks off, it creates a temporary vacancy that must be filled. CSXT's collective bargaining agreements with T&E employees establish procedures for filling temporary vacancies. The agreements generally require CSXT to first try to fill the temporary vacancy with an employee from an extra board. Extra boards operate similar to pools insofar as the employees assigned to them are placed on a rotating list based on when they last worked, and are called to work in that order. Unlike an employee who works in a pool, however, an extra board employee's primary function is to remain available to fill temporary vacancies. Some extra boards are "guaranteed," meaning that the employees

3

>       assigned to them are assured a minimum income provided they are available to
>       work for a certain period of time, while other extra boards are not guaranteed.
>
>       Rather than working in pool service or on an extra board, some T&E
>       employees work jobs that have fixed hours and assigned off days. These types of
>       jobs include yard jobs, and local or road switcher assignments. Yard jobs involve
>       sorting freight cars into trains through a process known as switching. Local or road
>       switcher assignments involve operating trains that run on a fixed schedule and
>       service customers.

(*Id.* ¶¶ 5-7.)

In their complaint, Plaintiffs have made three contentions: First, Plaintiffs have alleged CSXT "unlawfully inflates the amount of time employees are charged for FMLA leave" by accounting for it by the day instead of by the hour. (Compl. ¶ 3, ECF No. 1.) Second, Plaintiffs allege CSXT, in 2015, "implemented an attendance policy that explicitly punishes employees for taking lawful FMLA leave." (*Id.* ¶ 4.) Third, Plaintiffs allege CSXT unlawfully suspended or terminated over 100 employees beginning in 2017 and continuing to the present because CSXT, without factual basis, concluded they had taken FMLA leave over the holiday times of Christmas 2017 and New Year's Eve and Day 2017-18 when they had no legitimate need to take it. (*Id.* ¶ 5.) CSXT seeks summary judgment as to discrete portions of Plaintiffs' case, specifically, the first and second contentions stated above.

### a. *Inflation of FMLA Leave*

With respect to whether CSXT accounts for FMLA leave by the day instead of by the hour, CSXT adamantly denies, and supports its argument with an affidavit denying, that it follows the alleged practice. Its company representative, Jolanda Johnson, who is the Manager of Benefits, declares that CSXT accounts for "FMLA leave by the hour and not by the day, and this practice has been consistent throughout [her] 13-year tenure as Benefits Manager." (Jolanda Johnson Decl.

4

¶ 5, Def.'s Mot. Summ. J. Ex. A, ECF No. 15-3.) Ms. Johnson explained how the company accounts for FMLA leave:

> T&E employees such as locomotive engineers and conductors for the most part do not work a set schedule and instead are called to work on an as-needed basis. T&E employees indicate that they are available for work by "marking up" for it, and indicate that they are not available for work by "marking off." An employee can mark off from work for FMLA leave. In that case, the leave period starts when the employee marks off from work and ends when the employee marks back up for work.
>
> CSXT calculates the amount of FMLA leave taken by T&E employees on a prorated basis to reflect an eight-hour workday (even though a T&E employee's on-duty time can run for well over eight hours in a day). In other words, CSXT divides the total amount of time that the employee is marked off for FMLA leave on a single calendar day by three (the number of 8-hour increments in each day), and charges that amount against the employee's 12-week allotment of FMLA leave. So, for example, if a T&E employee is marked off for all 24 hours of the day, CSXT does not charge that employee with having used 24 hours of leave (even though he could have been called to work at any point during that time period, and may have worked for up to 12 hours). Instead, CSXT charges the employee with having taken 8 hours of leave. Similarly, if a T&E employee is marked off for three hours in a single day, CSXT charges the employee with having taken only one hour of leave. Thus, if anything, this method of accounting results in CSXT charging T&E employees with having taken *less* FMLA leave than they have actually taken.

(*Id.* ¶¶ 6-7.)

Plaintiffs apparently concede their initial allegation regarding FMLA leave being counted as days rather than hours is unsupported by evidence (Pls.' Opp'n 5, ECF No. 23) because their opposition relies upon a recasting of the allegation. Plaintiffs now argue, based upon CSXT's evidence, that CSXT systematically overcharges employees for taking FMLA leave because the leave is recorded as one third of the total hours taken off regardless of the amount of time employees would have actually worked during that time. (*Id.* 25.) Plaintiffs posit as an example "a CSX employee who marks two days off for FMLA leave is charged with using 16 hours of leave (48 total hours divided by three)." (*Id.* 5.) They claim that CSXT's FMLA leave calculation formula "effectively assumes that its employees work one-third of the time—day or night, seven

5

days a week, 365 days a year[, but b]ecause the employees in fact work less than this, CSX's formula systematically overcharges employees for taking FMLA leave." (*Id.* 5.) Plaintiffs' argument is hard to follow.

The Court's understanding of the record evidence is that, generally, T&E employees are paid based on their *availability* to work, regardless of whether they are called to work on a particular day or when during a particular day they are called to work. By marking off, they are telling CSXT they are unavailable to work. Whether they are entitled to be paid for the time they are marked off is determined by the specific type of leave taken. When they mark off on the basis of their FMLA leave, it is understood that FMLA leave is leave without pay, according to the statutory scheme. Consequently, it is perfectly reasonable for the company to record the amount of their FMLA leave so that it can be determined how much of their statutorily allowed twelve workweeks of FMLA leave per year is being used. But as CSXT points out, the company only accounts for one third of the actual hours of FMLA leave.

This calculation is expounded upon in Jolanda Johnson's second declaration, included with CSXT's opposition to Plaintiffs' motion to amend their complaint:[1]

> The FMLA entitles eligible employees to a total of 12 workweeks of leave during any 12-month period for certain qualifying reasons. T&E employees such as locomotive engineers and conductors for the most part do not work a set schedule and instead are called to work on an as-needed basis. As a result, the actual workweek for most T&E employees varies in length from one week to another.
>
> Needless to say, T&E employees do not work 24 hours a day, 7 days a week. Nevertheless, in calculating the amount of FMLA leave to which T&E employees are entitled, CSXT credits T&E employees as if every one of them worked 24 hours a day, 7 days a week. This method results in T&E employees effectively accruing up to 2,016 hours of FMLA leave each year—12 workweeks of 168-hour weeks— which is then prorated to a 56-hour workweek, or one-third of the total number of hours in a week.

---

[1] The Court may properly consider any record evidence in ruling upon CSXT's motion for summary judgment. Fed. R. Civ. P. 56(c)(1) ("The court need consider only the cited materials, but it may consider other materials in the record.").

In calculating the amount of FMLA leave taken by a T&E employee, CSXT likewise prorates the total amount of time marked off to a 56-hour workweek (which is equivalent to an 8-hour workday). Thus, for example, a T&E employee who marks off for an entire day is charged with using only 8 hours of FMLA leave, or one-third of the total amount of time for which he is marked off. Accordingly, both in crediting T&E employees for earning FMLA leave and in charging T&E employees for taking FMLA leave, CSXT treats them as being on duty for 24 hours a day, 7 days a week—the two sides of the equation balance each other out.

(2nd Jolanda Johnson Decl. ¶¶ 3-5, ECF No. 29-1.)

The Court concludes Plaintiffs' contention that they are systematically overcharged for FMLA leave is wholly lacking in factual support and is fundamentally flawed as a matter of law. CSXT is entitled to summary judgment on this issue.

### b. Attendance Policy's Alleged Punishment for FMLA Leave

Plaintiffs' second contention is that CSXT instituted an attendance policy that explicitly punishes employees for taking lawful FMLA leave. The policy in question is the CSX Transportation Attendance Points System ("CAPS Policy"), which became effective March 1, 2014. (Def.'s Mot. Summ. J. Ex. B-4, ECF No. 15-15.) The CAPS Policy's purpose is summarized at the beginning of it:

> CSXT views this attendance point system as a reasonable and objective means to assist employees in understanding their attendance obligations and the potential consequences of the failure to meet these obligations. The policy provides employees with attendance issues an opportunity to improve their records through regular and steady attendance, as well as providing a reasonable and objective basis for the imposition of discipline for instances of non-attendance. CAPS is not intended as a punitive measure for those employees with chronic illness nor is it intended to significantly impact employees whose attendance is normally consistent but is temporarily affected by special circumstances.

(*Id.*)

The policy includes the company's method for assessment of points:

> a. Subject to the Attendance Point Schedule below, employees will be assessed points for various incidents of non-attendance, including both full and/or partial day absences.

7

b. Points will accumulate and will result in handling each time the point total is equal to or greater than twenty (20).

c. Each employee will have electronic access to his/her attendance record via Crew Web. Any assessment or deduction in points will be reflected in this record.

### ATTENDANCE POINT SCHEDULE

| Attendance Incident | Point Value (Per Day) Monday - Thursday | Point Value (Per Day) Friday - Sunday |
|---|---|---|
| Missed Call | 10 | 10 |
| Unauthorized and unavailable full or partial day | 4 | 6 |
| Sick - without valid medical documentation | 4 | 6 |
| Sick - with valid medical documentation* | 3 | 3 |
| Hospitalization or Emergency Treatment – with valid medical documentation | 0 | 0 |

**\*Employees must submit the required documentation from a doctor supporting the entire period of absence as provided by the Medical Review Process in Section 3 below. Employees will not be assessed any points under this policy for absences due to an approved leave under the Family and Medical Leave Act and/or a work-related illness or injury supported by a valid doctor's note submitted to the Medical Department.**

(*Id.* ¶ 1.)

After setting forth how points are accumulated, the policy then explains how an employee can earn good attendance credits to counteract the assessed points:

a. **Three (3) points** will be deducted from an employee's accumulated point total for every calendar month in which the employee has no attendance incidents covered under the Attendance Point Schedule above **and** has not otherwise been absent during the calendar month for any reason, with the

8

exception of approved vacation, demand day off (DDO), personal leave, jury duty, work-related illness or injury with valid doctor's note and bereavement leave days.

    b. An employee's point total cannot be less than zero (0).

(*Id.* ¶ 2.)

Finally, the CAPS Policy sets out the schedule for handling attendance issues through a progressive disciplinary approach:

    a. An employee who accumulates at least twenty (20) points will be subject to progressive handling **each time** his/her point total reaches twenty (20) or more points, in accordance with the following disciplinary schedule:

**ATTENDANCE HANDLING SCHEDULE**

| Step | Accumulated Points | Handling |
|---|---|---|
| 1 | >20 | Counseling Letter 1 |
| 2 | >20 | Counseling Letter 2 |
| 3 | >20 | Formal Reprimand (Subject to CBA Discipline Procedures) |
| 4 | >20* | Dismissal (Subject to CBA Discipline Procedures) |

**\*For purposes of dismissal only, the twenty (20) point total will be increased two (2) points for each five (5) years of service. For instance, a twenty (20) year employee will be subject to dismissal upon accumulation of 28 points, following assessment of discipline at Step 3.**

    b. Following handling at each of the steps above, including written counseling letters, ten (10) points will be deducted from the employee's point total. For example, if an employee accumulates 22 points and is handled at Step 1 (Counseling Letter 1), the employee's new point total will be reset to 12 points (22 minus 10). The next time the employee reaches the 20 point threshold, he/she will be subject to handling at Step 2, and the process will be repeated.

    c. *The CAPS is not intended to preclude legally protected leaves such as FMLA or other excused absences which are properly certified and/or documented, including bereavement leaves, paid personal days or leaves of absence under any applicable collective bargaining agreements, absences caused by work-related illness or injury, jury duty, military leaves or union*

9

> *business. However this does not necessarily entitle an employee to the reduction in points referenced in Section 2(a) above.*

(*Id.* ¶ 4 (italics added).)

Plaintiffs' argument as to how the CAPS Policy "explicitly punishes employees for taking lawful FMLA leave" is convoluted and is premised upon hyperbole and distortion of governing regulations. By its express terms, the policy does *not* assess attendance points for "absences due to an approved leave under the Family and Medical Leave Act." (*Id.* ¶ 1.) What it also does not do—the point about which Plaintiffs cry foul—is to award good attendance credits in months in which an employee takes FMLA leave. But it also does not award good attendance credits in months when an employee takes other forms of unpaid leave with two exceptions explained *infra*. Thus, the CAPS Policy treats FMLA leave no differently from other kinds of equivalent, unpaid leave.

Both FMLA leave, whether or not for work-related illness or injury, and non-FMLA leave based upon work-related illness or injury are exempted from the assessment of attendance points under the CAPS Policy. This refutes Plaintiffs' argument that the CAPS Policy "explicitly punishes employees for taking lawful FMLA leave." However, Plaintiffs go on to argue that they are "punished" by not being allowed to earn good attendance credits for months in which they take FMLA leave. Neither the facts nor applicable law supports their argument.

The CAPS Policy allows good attendance credits to be earned in months in which an employee takes the following forms of leave: approved vacation, demand day off ("DDO"), personal leave, jury duty, work-related illness or injury with valid doctor's note, and bereavement leave. Plaintiffs point out that DDOs and absences due to work-related illnesses or injuries that are supported by a valid doctor's note are not forms of paid leave, according to John Johnson's Declaration, paragraph 12. (*See* Pls.' Opp'n 19-20.) However, CSXT explains that DDOs are

awards "to locomotive engineers who have had perfect attendance for an entire quarter of the year." (John Johnson Decl. ¶ 12.) It would make no sense to count the legitimate use of an attendance award as a basis for *not* awarding a good attendance credit. And a DDO is in no wise equivalent to FMLA leave, which is not an award for good attendance. It is also reasonable that CSXT distinguishes between work-related illness or injury and illnesses or injuries not related to work in treating the former, but not the latter, as an acceptable basis for earning a good attendance credit. All forms of non-work-related illness or injury, including FMLA leave, are excluded from the good attendance credit calculation. Consequently, FMLA leave is treated the same as non-FMLA, non-work-related illness or injury in the context of earning good attendance credit. Further, if an employee chose to use FMLA leave for a work-related illness or injury, he would still qualify for the good attendance credit. The dividing line between eligibility and ineligibility to earn good attendance credits for sick leave is not FMLA leave versus non-FMLA leave but work-related versus non-work-related illness or injury.

These circumstances establish the legitimacy of CSXT's attendance policy as a permitted policy under the FMLA. They also marry with the governing statutes and regulations and the Department of Labor's comments on those regulations. Section 2614(a)(2) of Title 29, United States Code, provides that the taking of FMLA leave "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." As noted above, the CAPS Policy does not cause the forfeiture of any previously accrued employment benefit for one taking FMLA leave. However, section 2614 goes on to say,

> Nothing in this section shall be construed to entitle any restored employee to—
> (A) the accrual of any seniority or employment benefits during any period of leave; or
> (B) any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.

11

29 U.S.C. § 2914(a)(3). A T&E employee taking FMLA leave is not statutorily entitled, therefore, to the accrual of good attendance credits while on leave.

The published regulations on this aspect of FMLA leave are found at 29 C.F.R. § 825.215 (2019) and 29 C.F.R. § 825.220 (2019). Employers are prohibited under § 825.220(c) from treating "the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies." Even so, the regulations distinguish between disciplinary actions and the award of bonuses premised upon achievement of set goals:

> [I]f a bonus or other payment is based on the achievement of a specified goal such as hours worked, products sold or perfect attendance, and the employee has not met the goal due to FMLA leave, then the payment may be denied, unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave. For example, if an employee who used paid vacation leave for a non-FMLA purpose would receive the payment, then the employee who used paid vacation leave for an FMLA-protected purpose also must receive the payment.

29 C.F.R. § 825.215(c)(2). Before establishing this rule in 2008, the Department of Labor allowed comments. One of the objections was that it would permit conduct tantamount to interference with an employee's exercise of FMLA rights. The Department responded, however, that it believed the rule change provides a fairer result for all employees than the prior regulation, which had been interpreted as requiring an employer to award good attendance credits to employees taking FMLA leave even when employees taking non-FMLA leave could not receive them. Under the rule change, treating FMLA leave the same in this regard as equivalent, non-FMLA leave was deemed by the Department to be fairer. The Family and Medical Leave Act of 1993, 73 Fed. Reg. 67934-01, 67985 (Nov. 17, 2008). The Department said further,

> The revised regulation does not contradict the principle in § 825.220(c) that prohibits employers from using the taking of FMLA leave as a negative factor in employment actions or counting FMLA leave under "no fault" attendance policies.

Penalizing an employee for taking FMLA leave under a "no fault" attendance policy is distinct from disqualifying an employee from a bonus or award for attendance because the former faults an employee for taking leave itself whereas the latter denies a reward for achieving the job-related performance goal of perfect attendance.

The Court concludes that, as a matter of law, the CAPS Policy does not violate the FMLA. CSXT is entitled to summary judgment on this issue.

### B. *Motion to Dismiss or Strike Class Allegations*

CSXT asks the Court to dismiss or strike Plaintiffs' class allegations for three reasons: (1) any representative claims must proceed as a collective action rather than a class action; (2) the proposed class is an improper fail-safe class; and (3) the proposed class is overbroad. This request is not properly before the Court now because it is effectively an opposition to Plaintiffs' anticipated motion for class certification and is, therefore, premature. *See* 7B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1795, at 40 (3d ed. 2005) ("Subdivision (d)(4) [of Rule 23 permitting the elimination of class allegations] is procedurally inseparable from subdivision (c)(1)(A) [governing class certification "at an early practicable time"]"). *See also Law Offices of Leonard I. Desser, P.C. v. Shamrock Communications, Inc.*, Civ. No. JKB-12-2600, 2013 WL 2244811, at *2, 2013 U.S. Dist. LEXIS 94268, at *5-6 (D. Md. May 21, 2013). The case is presently stayed while arbitration on Plaintiffs' claims of improper disciplinary action proceeds. At the proper juncture in this case, the Court will entertain a motion for class certification if Plaintiffs choose to file one. This portion of CSXT's motion will be denied without prejudice.

### III. *Plaintiffs' Motion for Leave to Amend Their Complaint*

Plaintiffs seek to add claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, to add 21 additional named Plaintiffs, and "to add more factual detail and

13

nuance gleaned from Defendant's answer and motion to dismiss." (Pls.' Mot. Amend Mem. Supp. 1, ECF No. 20-1.) The proposed amended complaint is deficient, however, and Plaintiffs' motion will be granted in part and denied in part.

### A. Standard for Motion to Amend

A motion for permission to amend the complaint is governed by Rule 15(a), which directs the Court to "freely give leave when justice so requires." The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied only in three situations: when the opposing party would be prejudiced, when the amendment is sought in bad faith, or when the proposed amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). A proposed amendment is considered futile if it cannot withstand a motion to dismiss. *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). The standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6) is well known:

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true

all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

***B. Analysis***

The Court concludes most of the proposed amendments are futile. Plaintiffs continue to rely upon their unsustainable argument that the CAPS Policy violates the FMLA by systematically overcharging employees with FMLA leave and punishing them by not counting FMLA leave to award them for good attendance. Any allegations in support of those contentions and any causes of action premised on the same are futile. In addition, Plaintiffs baldly allege that their serious health conditions within the meaning of the FMLA also constitute disabilities within the meaning of the ADA. No factual allegations of any kind support that conclusional allegation. Further, they baldly allege that CSXT violated the ADA's antidiscrimination provisions by utilizing the CAPS Policy in calculating good attendance credits. Yet, they offer no plausible factual allegations of nondisabled individuals who were treated more favorably under the policy than the Plaintiffs who are claiming they are disabled. And they offer no plausible factual allegations of disability discrimination based upon CSXT's disciplinary actions against those whom CSXT accused of dishonesty in connection with their use of FMLA leave at the holiday times of Christmas 2017 and New Year's Eve and Day of 2017-18. The counts premised upon violations of the ADA are not viable. The only factual allegations that survive under a Rule 12(b)(6) analysis are those of individual Plaintiffs who claim they were disciplined in violation of the FMLA. Plaintiffs' motion will be granted to that extent but otherwise denied. When the stay is lifted, Plaintiffs may seek leave to file a complaint that comports with the Court's opinion. Any statute of limitations as to the proposed new Plaintiffs on their claim of retaliation in violation of the FMLA will be tolled until thirty days after the stay is lifted.

## IV. Conclusion

CSXT will be granted summary judgment on Plaintiffs' assertions of FMLA violations in relation to the calculation of FMLA leave and the calculation of good attendance credits. CSXT's request for dismissal or striking of the class allegations will be denied as premature. Plaintiffs' motion to amend their complaint will be granted to the extent of their FMLA retaliation claims for new Plaintiffs but will be otherwise denied. A separate order follows.

DATED this __15__ day of May, 2019.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
Chief Judge