## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DANIEL BELL,** *et al.***,** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civ. No. JKB-18-00744** |
| **CSX TRANSPORTATION, INC.,** | * | |
| **Defendant.** | * | |

*   *   *   *   *   *   *   *   *   *   *   *

### MEMORANDUM

Plaintiffs—a group of 63 current and former employees of Defendant CSX Transportation, Inc. ("CSX") residing across 15 states—have brought this action alleging violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* (ECF No. 104.) This case was stayed for several years while the unions representing the Plaintiffs pursued related arbitration proceedings against CSX. Those arbitrations have since concluded, and CSX has moved for summary judgment in its favor. The Motion is fully briefed, and no hearing is necessary.[1] *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, CSX's Motion for Summary Judgment (ECF No. 91) will be denied.

The Court will begin by providing a synopsis of the lengthy procedural history of this case. The Court will then discuss the factual background of the case, including a summary of CSX's internal investigations and the related arbitration proceedings. Finally, the Court will

---

[1] Although the instant Motion for Summary Judgment was filed before the filing of the operative First Amended Complaint, the Court expressly informed the parties that it would consider this Motion ripe upon the filing of the First Amended Complaint, because the new Complaint only added new Plaintiffs and did not otherwise broaden the scope of the allegations, and because both parties' summary judgment briefing assumed that the additional Plaintiffs named in the now-operative First Amended Complaint would be added to the case. (*See* ECF No. 96 at 2.) Therefore, the arguments raised by the parties in their summary judgment briefing retain their full force and the Court is not in need of any additional briefing.

analyze CSX's two arguments for why summary judgment should be granted: (1) that the Plaintiffs' claims are preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*, and (2) that issue preclusion attaches to the arbitral fact-findings and forecloses the Plaintiffs' claims. The Court will explain why both contentions are unavailing.

## I.    PROCEDURAL BACKGROUND

This case has had a long and tortured procedural history to date. The origins of the issues central to the pending Summary Judgment Motion lie in the holiday season surrounding Christmas 2017 and New Years Day 2018. CSX is a railroad company that operates a 365-day-a-year business, meaning employees are sometimes expected work on weekends and holidays. (ECF No. 104 at 2.) However, a group of employees who were scheduled to work over this holiday period took time off, purportedly for FMLA leave.[2]  CSX purportedly did not believe that the employees were actually using the time off for FMLA purposes, but instead accused the employees of dishonestly using FMLA leave to avoid having to work over the holidays. As a result, CSX suspended or terminated the employees after an internal investigation. (*Id.* at 3.)

In March 2018, Plaintiffs, at that point consisting of twenty current or former CSX employees, filed a Complaint in this Court alleging violations of the FMLA. (ECF No. 1.) Plaintiffs made three contentions in the initial Complaint: (1) that CSX unlawfully inflated the amount of time employees were charged for taking FMLA leave (the "inflation claims"); (2) that CSX's attendance policy, known as the CSX Transportation Attendance Points System ("CAPS") punished employees for taking FMLA leave (the "CAPS policy claims"); and (3) that CSX improperly disciplined employees who took FMLA leave during the holiday season from

---

[2] The FMLA permits covered employees to take up to twelve weeks of unpaid leave because of a serious health condition or to care for a close family member. *Coleman v. Ct. of App. of Md.*, 566 U.S. 30, 34 (2012) (citing 29 U.S.C. § 2612(a)(1)).

2

Christmas 2017 through New Years Day 2018 (the "holiday-season leave claims"). (*Id.* at 2–3.) In June 2018, Plaintiffs sought leave to file an amended complaint, adding 21 additional plaintiffs and raising new claims. (ECF No. 20.)

Discovery began in June 2018 and was initially scheduled to be completed by December of that same year. (ECF No. 18; *see also* ECF No. 91-1 at 3 (CSX stating that "the parties engaged in extensive discovery including dozens of depositions and the exchange of thousands of pages of documents").)

In November 2018, the Court stayed proceedings with respect to the holiday-season leave claims, pending the conclusion of factually related arbitration—discussed in more detail below— under the Railway Labor Act ("RLA") and the collective bargaining agreements ("CBAs") between CSX and the unions representing Plaintiffs. (ECF No. 40.) Meanwhile, Plaintiffs sought leave to file a second amended complaint to add a further 23 new plaintiffs (before the Court had yet ruled on their first motion for leave to amend), and the Court denied this motion without prejudice in December 2018. (ECF No. 45.)

In May 2019, the Court granted summary judgment in favor of CSX with respect to the inflation claims and the CAPS policy claims, finding that the undisputed evidence showed that CSX did not improperly inflate the amount of FMLA time charged and that CSX's CAPS attendance policy did not violate the FMLA. *Bell v. CSX Trans., Inc.*, Civ. No. JKB-18-0744, 2019 WL 2146917 (D. Md. May 16, 2019). (ECF Nos. 50, 51.) As a result, the inflation claims and CAPS policy claims are no longer at issue in this case; the sole remaining claims are the holiday-season claims.

In that same May 2019 ruling, the Court also denied as premature CSX's motion to dismiss or strike Plaintiffs' class allegations, without prejudice to CSX raising its opposition

3

again if Plaintiffs sought class certification. (*Id.*) Finally, the Court mostly denied Plaintiffs'
request for leave to file a second amended complaint, except with respect to Plaintiffs' request to
add 23 additional Plaintiffs who claimed that they were disciplined for taking FMLA leave. The
Court granted Plaintiffs leave to file an amended complaint with respect to these Plaintiffs when
the stay was lifted. (*Id.*) The Court issued a subsequent order in July 2019, clarifying that, once
the stay was lifted, Plaintiffs could seek leave to amend their complaint to incorporate the
proposed plaintiffs from both the first and second proposed amended complaints. (ECF No. 55.)

Meanwhile, counsel for Plaintiffs filed a similar case in the Middle District of Florida,
representing five additional plaintiffs. *Billingsley v. CSX Trans., Inc.*, Civ. No. 3:19-858-J-
39JBT (M.D. Fla.). That case was transferred to the District of Maryland upon CSX's motion,
*see Billingsley v. CSX Trans., Inc.,* Civ. No. 20-858-JKB, and was subsequently consolidated
with the instant case in May 2020. (ECF No. 63.)

Following the Court's May 2019 decision, this case entered an essentially dormant period
while the Plaintiffs' holiday-season claims wended their way through arbitration.    Those
proceedings concluded by August 2023, and accordingly the Court directed CSX to file an
appropriate dispositive motion or explain why such a motion would not be proper. (ECF Nos.
89, 90.) In response, CSX filed the instant Motion for Summary Judgment, arguing that
Plaintiffs' remaining claims should be dismissed because Plaintiffs' claims are preempted by the
RLA and that in any event Plaintiffs are precluded from relitigating the same issues regarding the
holiday-season FMLA claims that were already decided in arbitration. (ECF No. 91-1.)

The Court lifted the stay in this case on April 1, 2024, and directed Plaintiffs to file an
Amended Complaint that would add the parties proposed to be added in Plaintiffs' earlier
motions for leave to amend the complaint (which had been previously denied without prejudice).

4

(ECF No. 96.)  Plaintiffs filed an unopposed Motion for Leave to Amend (ECF No. 101), which was granted.[3]  (ECF No. 103).  At the same time, the Court also granted Plaintiffs' unopposed motion to substitute estate administrators for two Plaintiffs who have died during the pendency of this action.  (ECF No. 102.)

The operative complaint is the First Amended Complaint, which was filed on April 23, 2024. (ECF No. 104.)  Although the First Amended Complaint is styled as a class action, Plaintiffs have not moved for class certification, so each Plaintiff's claims are currently being pursued on an individual basis.[4]

## II.  FACTUAL BACKGROUND

The parties agree on the basic outline of how CSX's internal review and the subsequent arbitrations unfolded.  After CSX accused the Plaintiffs of abusing FMLA leave, CSX held internal hearings to determine whether to discipline them. (ECF No. 92 at 4.)  After the internal hearings, CSX suspended or fired most of the charged employees.  Plaintiffs then brought this action.  (*Id.*)  Roughly contemporaneously with the filing of this lawsuit, the unions representing the Plaintiffs brought claims in arbitration, alleging violations of the collective bargaining agreements ("CBAs") between the unions and CSX.  (*Id.* at 4–5.)  The arbitrators, who were organized into panels of the National Railroad Adjustment Board and Public Law Board

[3] Six individuals who were named as plaintiffs in either the original Complaint or one of the proposed complaints were not named as plaintiffs in the operative First Amended Complaint, and are accordingly no longer parties to this case. These individuals are: Jeremy Bright, Craig Donnelly, Harvey Ferran, Brandon Martin, Justin McMannis, and Eric Winks. (*Compare* ECF No. 1 at 1 *and* ECF No. 20-4 at 2 *and* ECF No. 43-3 at 1 *with* ECF No. 104 at 1.) Plaintiffs do not explain why these individuals were not included as parties in the operative First Amended Complaint.

[4] The Court observes that Plaintiffs might encounter serious difficulties in meeting the requirements for class certification under Federal Rule of Civil Procedure 23. Adjudicating Plaintiffs' holiday-season FMLA claims will likely require the Court to conduct fact-intensive, individualized inquiries into whether each individual Plaintiff was disciplined in retaliation for exercising his or her FMLA rights. Courts generally have declined to permit FMLA lawsuits to proceed as class actions in these circumstances. *See* Family and Medical Leave Act (FMLA), 7 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 23:9 (6th ed. 2023) (collecting cases).

5

("PLB"), then reviewed the findings of CSX's internal procedures.[5] The arbitrators' review was limited to the record generated during CSX's internal proceedings. (*Id.*; ECF No. 93 at 16.)

CSX's internal investigations were conducted pursuant to the CBAs between the Plaintiffs' unions and CSX. The CBAs provide that no employee can be disciplined without just cause and without a fair and impartial hearing. (Brotherhood of Locomotive Engineers & Trainmen ("BLET") System Agreement, Art. 30.A.1 (ECF No. 93-2 at 14); 2010 United Transportation Union Agreement, Art. 10 §1.A.1 (ECF No. 93-2 at 23); 1994 United Transportation Agreement, Rule 17(a) (ECF No. 93-2 at 32).) Two of the CBAs grant engineers and conductors the right to request documents for review prior to the investigation. (BLET System Agreement, Art. 30.B.4.f (ECF No. 93-2 at 17); 2010 United Transportation Union Agreement, Art. 10 § 2.A.4.f (ECF No. 93-2 at 26).) Two of the CBAs also specify that employees or their representatives have the right to identify any witnesses "known to have material facts," and that CSX must allow these witnesses time off of work so that they can attend the hearings. (BLET System Agreement, Art. 30.B.1.d (ECF No. 93-2 at 15–16); 2010 United Transportation Union Agreement, § 2.A.1.d (ECF No.93-2 at 24).) A third states that charged employees "shall have reasonable opportunity to secure the presence of necessary witnesses and shall have the right to be there represented by counsel of his choosing." (1994 United Transportation Agreement, Rule 17(a) (ECF No. 93-2 at 32).)

The process for CSX's internal investigation was as follows: a CSX employee acting as a "company witness" or "charging officer" would offer evidence in support of the allegations against the employee. (ECF No. 93 at 14; Drummond Dep. at 12:1–9 (ECF No. 92-1 at 13).) Another CSX employee, acting as a "hearing officer," would develop the factual record by

---

[5] The National Railroad Adjustment Board is established by federal statute to adjudicate labor disputes covered under the RLA. 45 U.S.C. §153(first).

questioning witnesses and ruling on objections, and would issue findings as to whether the charges were proven or not. (Jones Decl. ¶¶ 9–11 (ECF No. 93-2 at 5–6); Drummond Dep. at 10:12–11:25, 13:10-15 (ECF No. 92-1 at 11–12, 14).) CSX has attached to its Motion for Summary Judgment briefing over 3,500 pages of hearing transcripts and other documents that appear to have constituted the record of its internal investigations. (*See* ECF No. 93-2 at 35–435; ECF Nos. 93-3–93-8.)[6] The findings of the hearing officer were then reviewed by a CSX general superintendent or general manager, who made the final decision on whether the charges were proven and whether to impose discipline, after consultation with CSX's labor relations department. (Jones Decl. ¶¶ 11–12 (ECF No. 93-2 at 6).)

After CSX made its final disciplinary decisions, the unions representing the Plaintiffs—the BLET and the United Transportation Union—filed claims before the PLB and National Railroad Adjustment Board, alleging that CSX's imposition of discipline violated the terms of the CBAs between the unions and the company. Arbitral panels met between 2019 and 2023, usually in Chicago, and decided each Plaintiff's claim on a case-by-case basis. (*See generally* ECF No. 91-3.) The arbitrators released written findings in each case, typically about 2 to 6 pages in length. (*Id.*)

The parties agree that the arbitrators' task was essentially an appellate-style review of CSX's disciplinary decisions, and that this review was limited to the record generated by CSX's internal investigations. (*See* ECF No. 92 at 5; ECF No. 93 at 16.) The standard of review that the arbitrators used in most cases is expressed as follows:

> The Carrier [*i.e.*, CSX]'s burden in matters such as this is not proof beyond a reasonable doubt, but merely the production of substantial evidence to support the

---

[6] The records provided by CSX appear incomplete, as CSX has not provided any of the internal records for any of the Plaintiffs who prevailed on the merits of the CBA claims before the arbitrators.

discipline assessment, which has been defined in prior awards as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

(Paulk Award at 7 (ECF No. 91-3 at 249).)

In most instances, the arbitrators found that CSX had produced sufficient evidence to support its disciplinary action—most often in the form of a pattern of the employee taking FMLA leave on or around holidays without providing supporting documentation—and found in favor of the company. (*See, e.g.*, Bell Award (ECF No. 91-3 at 17–21.) But the arbitrators reversed all disciplinary actions against seven of the Plaintiffs on the grounds that CSX lacked sufficient evidence to discipline them. (ECF No. 91-1 at 6 n.8.) In these instances, the arbitrators typically found that CSX failed to show that the employees were abusing FMLA leave, because during CSX's internal investigations, Plaintiffs had produced medical records attesting to an actual need to take time off on the days in question. (*See, e.g.*, Diehl Award (ECF No. 91-3 at 101–05); McShee Award (ECF No. 91-3 at 200–05); Siewert Award (ECF No. 91-3 at 283–87).) The arbitrators also found in favor of one Plaintiff on procedural grounds.[7] (Wood Award (ECF No. 91-3 at 351–54).) Moreover, in some cases where the arbitrators found that CSX had sufficient evidence for disciplining a Plaintiff, the arbitrators nevertheless reduced the amount of discipline imposed, for example by reducing a termination to a temporary unpaid suspension. (*See, e.g.*, Walker Award at 5 (ECF No. 91-3 at 327).) The written decisions of the arbitrators were formulaic, with many of them containing long passages that are identical from decision to decision. (*See generally* ECF No. 91-3.)

---

[7] Another CSX employee, Eric Winks, also prevailed in arbitration on procedural grounds after having been disciplined by the company for purported FMLA misuse. (Winks Award (ECF No. 91-3 at 345–49.) He was named as a proposed plaintiff in one of Plaintiffs' proposed amended complaints (*see* ECF No. 43-3 at 9), but was not included in the operative First Amended Complaint (ECF No. 104). *See supra* n.3.

## III. CSX'S MOTION FOR SUMMARY JUDGMENT

CSX moves for summary judgment on two grounds: preemption under the RLA, and issue preclusion. Under the facts of this case, neither argument provides adequate grounds for summary judgment. Accordingly, CSX's Motion will be denied.

### A. Summary Judgment Legal Standard

A party seeking summary judgment must show that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of any genuine dispute of material fact. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). In proving the presence or absence of a genuine dispute, either party may point to materials in the record, such as admissions, stipulations, depositions, documents, and electronically stored information. Fed. R. Civ. P. 56(c). In determining whether a genuine dispute exists, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

### B. Preemption Under the Railway Labor Act

CSX argues that the RLA preempts Plaintiffs' claims. The Court disagrees.

Congress enacted the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes" in the railroad industry. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). The RLA accomplishes this goal by establishing "a mandatory arbitral mechanism for the 'prompt and orderly settlement' of two classes of dispute." *Id.* (quoting 45 U.S.C. § 151a). The first class, deemed major disputes, concern "rates of pay, rules or working conditions," whereas the second class, deemed minor

9

disputes, concern grievances or the interpretation of an existing CBA. *Id.* In short, "major disputes seek to create contractual rights, minor disputes to enforce them." *Id.* (quoting *Consol. Rail Corp. v. Ry. Lab. Execs' Ass'n.*, 491 U.S. 299, 302 (1989)). Under the RLA, minor disputes are adjudicated by arbitral panels of the National Railroad Adjustment Board, which is "a specialized tribunal consisting equally of union and carrier representatives." *Polk v. Amtrak Nat'l R.R. Passenger Corp.*, 66 F.4th 500, 504 (4th Cir. 2023) (citing 45 U.S.C. §153(first)).

Minor disputes "must be resolved only through the RLA mechanisms," but "the RLA's mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the CBA." *Hawaiian Airlines*, 512 U.S. at 253, 256. As the Fourth Circuit has explained:

> Generally, the RLA will not bar a plaintiff from bringing a claim under an independent federal statute in court (because such claims are generally independent of the CBA and will be adjudicated under non-CBA standards). But a federal claim that depends for its resolution on the interpretation of a CBA lacks independence from the CBA, and the RLA precludes it.

*Giles v. Nat'l R.R. Passenger Corp.*, 59 F.4th 696, 702–03 (4th Cir. 2023) (quotations omitted). For RLA preemption to apply, an interpretation of the CBA must be "dispositive" to the plaintiff's claim; it is not enough that the CBA "might be relevant" to the case. *Id.* at 703.

Here, the Court readily concludes that the RLA does not preempt Plaintiffs' claims, because Plaintiffs seek to vindicate a statutory right rather than a right under the CBA, and the Court need not consult the CBA at all to determine whether their claims are viable. As Plaintiffs correctly observe, the interpretation of the CBA is not in dispute in this case. (ECF No. 92 at 8.) Instead, the parties agree that the fundamental question in this case is whether CSX improperly retaliated against Plaintiffs for taking FMLA leave. To answer this question, the Court need not even consult the CBA; instead, both parties agree that the relevant legal standard for addressing

10

Plaintiffs' claims in this case is whether CSX had a good-faith belief that Plaintiffs used their FMLA leave dishonestly, or whether this was a pretext for retaliation. (ECF Nos. 91-1 at 6; ECF No. 92 at 10.) *See Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 429 (4th Cir. 2015) (stating that in an FMLA retaliation action, "[i]f the defendant advances a lawful explanation for the alleged retaliatory action, the plaintiff must demonstrate that the defendant's reason for taking the adverse employment action was pretextual").

In short, Plaintiffs "assert[] a right under an independent federal statute, not the CBA, and [the Court] need not interpret the CBA to resolve this case." *Giles*, 59 F.4th at 703. For this reason, the RLA does not preempt Plaintiffs' FMLA claims.

## C. Preclusion

CSX argues that in the alternative, even if the RLA does not preempt Plaintiffs' FMLA claims outright, their claims are barred by the principle of issue preclusion as a result of the findings by the PLB and National Railroad Adjustment Board.

The doctrine of issue preclusion, also known as collateral estoppel, bars a party from re-litigating in a subsequent action factual questions that were litigated and essential to a valid prior judgment. *Hately v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019). A party seeking to rely on issue preclusion must show that (1) "the issue sought to be precluded is identical to one previously litigated"; (2) "the issue was actually determined in the prior proceeding"; (3) "the issue's determination was a critical and necessary part of the decision in the prior proceeding"; (4) "the prior judgment is final and valid"; and (5) "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum." *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quotation omitted). The party seeking the

11

protection of issue preclusion bears the burden of establishing its elements. *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982).

CSX argues that the findings of the PLB and National Railroad Adjustment Board should be given issue-preclusive effect. As CSX contends, the issue that the arbitrators addressed was not whether Plaintiffs in fact lied about their motives for taking FMLA leave, but rather whether CSX had sufficient evidence to reasonably believe that Plaintiffs were being dishonest. (ECF No. 93 at 11.)   Similarly, under the FMLA, the Court need not decide whether Plaintiffs "*actually engaged* in dishonesty," but rather must merely determine whether "suspected dishonesty was CSX[]'s actual reason for terminating the plaintiffs' employment." *Adkins v. CSX Trans., Inc.*, 70 F.4th 785, 794 (4th Cir. 2023) (emphasis in original).[8]  Since the arbitrators actually and necessarily determined that CSX had a legitimate, non-retaliatory reason for firing most of the Plaintiffs, CSX argues, Plaintiffs cannot now re-litigate this question, and thus their FMLA claims must fail. (ECF No. 91-1 at 7.)  And, according to CSX, for those Plaintiffs who prevailed in arbitration, they are not entitled to any further relief in this Court beyond what they won in arbitration.[9]  (*Id.* at 7–8.)

Here, as discussed in more detail below, the Court holds that issue preclusion cannot apply to seven of the Plaintiffs because their claims were never subject to arbitration. As to the other 56 Plaintiffs, the Court concludes that controlling Supreme Court caselaw prohibits it from

---

[8] "[T]he FMLA prohibits an employer from 'discharg[ing] or in any other manner discriminat[ing] against any individual for' exercising their FMLA rights." *Id.* at 792 (quoting 29 U.S.C. § 2615(a)(2)) (alterations in original).

[9] Because the Court determines that issue preclusion is not warranted, it need not address this argument that the Plaintiffs who prevailed in arbitration are "not entitled to anything more" beyond what they won in arbitration. (ECF No. 91-1 at 7.)  But the Court observes that Plaintiffs have requested several other types of damages, including attorneys' fees. (*See* ECF No. 104 at 77.)  "The FMLA directs the award of reasonable attorneys' fees to a prevailing plaintiff." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 303 (4th Cir. 2009) (citing 29 U.S.C. § 2617(a)(3)). Thus, even if the Court were to apply issue preclusion, the Plaintiffs who prevailed in arbitration may still be eligible for at least this extra category of relief.

giving issue-preclusive effect to the prior factual findings of arbitrators when those arbitrators were empowered only to decide issues arising from a CBA. Moreover, the Court finds that— even assuming *arguendo* that issue preclusion could be sometimes appropriate in such a scenario—issue preclusion should not apply to the findings of the arbitrators in this case. The Court reaches this determination because (1) the arbitrations had significant procedural limitations that prevented Plaintiffs from fairly presenting their federal statutory claims, and (2) the arbitrators did not actually determine the question of whether CSX's stated reasons for disciplining the Plaintiffs were pretextual.

### *1.  Plaintiffs Not in Arbitration*

As an initial matter, Plaintiffs contend that "eight of the Plaintiffs in this case did not request or engage in arbitrations related to the conduct at issue here," a point which CSX concedes. (ECF No. 92 at 5 n.1; *see also* ECF No. 91-1 at 5 (CSX stating that "[s]ixty-one (61) of the sixty-nine (69) individuals named either in Plaintiffs' proposed Second Amended Complaint or in the *Billingsley* complaint filed claims under the CBA challenging the same discipline challenged in the Complaint.").) One of those eight individuals is no longer a party to this case, but that still leaves seven Plaintiffs whose claims were indisputably never arbitrated.[10]

CSX does not provide any explanation as to why arbitration proceedings about claims that did not involve these Plaintiffs should preclude these Plaintiffs from litigating their dispute in this Court. Nor can the Court conceive of any way in which a plaintiff could be precluded from litigating their case due to a prior proceeding in which they were not a party or otherwise

---

[10] The seven Plaintiffs who did not have claims in arbitration are: (1) Ricky Anderson; (2) Don Biemer; (3) Nathan Dove; (4) Barry Gillum; (5) Scott Lawton; (6) Denver Peterson; and (7) Corey Secrest. (ECF No. 91-1 at 5 n.6.) An eighth individual, Justin McMannis, also did not have his claims arbitrated and was named as a proposed Plaintiff in Plaintiffs' Second Motion for Leave to Amend Complaint. (*Id.*; ECF No. 43-3 at 7.) For reasons not apparent in the record, McMannis was not named as a Plaintiff in the now-operative First Amended Complaint. (ECF No. 104.) *See supra* n.3.

represented and that did not involve their claims in any way.[11]   Without a relevant prior proceeding, none of the elements of issue preclusion can be met. *See Collins*, 468 F.3d at 217. Accordingly, the Court must deny CSX's Motion with respect to the seven Plaintiffs whose claims were not subject to arbitration.

## 2. *Whether Issue Preclusion is Prohibited Under* **Gardner-Denver**

The Court next turns to the question of whether it is permitted to apply issue preclusive effect to the findings of the arbitrators with respect to the 56 Plaintiffs whose claims were subject to arbitration.

As an initial matter, it is well settled that district courts have discretion to determine what weight, if any, to give arbitral fact-findings in subsequent litigation. *Hawkins v. Leggett,* 955 F. Supp. 2d 474, 502 (D. Md. 2013), *aff'd sub nom. In re Canarte*, 558 F. App'x 327 (4th Cir. 2014) (citing *Alexander v. Gardner-Denver*, 415 U.S. 36, 60 n.21 (1974) (stating that "the weight to be accorded an arbitral decision . . . must be determined in the court's discretion with regard to the facts and circumstances of each case")); *see also Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1212 (10th Cir. 2011); *Collins v. N.Y.C. Trans. Auth.*, 305 F.3d 113, 119 (2d Cir. 2002); *Jackson v. Bunge Corp.*, 40 F.3d 239, 246 (7th Cir. 1994). However, it is unsettled whether a court can properly assign issue-preclusive force to arbitral fact-findings to foreclose a plaintiff's federal statutory claim, when the arbitration was conducted pursuant to a CBA that did not expressly empower the arbitrators to decide federal statutory claims. *See Gautier v. Celanese*, 143 F. Supp. 3d 429, 433 (W.D. Va. 2013) (noting that circuit courts are

---

[11] There are several narrow circumstances under which a nonparty can be bound by a prior proceeding. *See Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008). But none of those circumstances apply to these seven Plaintiffs, and CSX does not attempt to argue otherwise.

14

split and that the Fourth Circuit has not addressed the issue). A review of the relevant Supreme
Court decisions helps clarify this question.

### a. The Gardner-Denver Line of Cases

In the 1974 case of *Gardner-Denver*, the Supreme Court considered whether a plaintiff's
right to pursue a Title VII discrimination claim in federal court was precluded by the fact that the
plaintiff had previously submitted his claim to arbitration under the terms of his union's CBA.
415 U.S. at 38. The Court held that, when an arbitrator's authority is limited under the CBA to
resolving contractual rights, the arbitrator's decision "could not prevent the employee from
bringing the Title VII claim in federal court 'regardless of whether certain contractual rights are
similar to, or duplicative of, the substantive rights secured by Title VII.'" *14 Penn Plaza LLC v.
Pyett*, 556 U.S. 247, 262 (2009) (quoting *Gardner-Denver*, 415 U.S. at 53–54). The Court
reasoned that Congress intended to provide a separate judicial forum for vindicating Title VII
rights, and that an arbitrator's power to resolve contractual disputes does not extend to the power
to adjudicate federal statutory claims, even when those claims implicate overlapping facts.
*Gardner-Denver*, 415 U.S. at 46–54. Moreover, the Court rejected the contention that courts
should "defer to arbitral decisions on discrimination claims." *Id.* at 55. The Court explained
that, because of the substantial procedural differences between arbitration and litigation in
federal court, deferring to arbitral fact-finding would effectively "deprive the petitioner of his
statutory right to attempt to establish his claim in a federal court." *Id.* at 56. Instead, the Court
stated that the findings of the arbitrators could be entered into evidence and given the weight that
the district court deemed appropriate, but they were not to be given preclusive effect. *Id.* at 60.
The Court subsequently expanded the holding of *Gardner-Denver* to apply to Fair Labor
Standards Act ("FLSA") claims, *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 745

(1981), and to cases brought under 42 U.S.C. § 1983, *McDonald v. City of West Branch*, 466 U.S. 284, 292 (1984).

More recently, in *14 Penn Plaza*, the Supreme Court held that a CBA that "clearly and unmistakably" required union members to arbitrate discrimination claims was enforceable as a matter of federal law, and that plaintiffs were therefore precluded from bringing such claims in federal court. 556 U.S. at 274. The Court went on to state that it had "abandoned" the "broad dicta that were highly critical of the use of arbitration" in *Gardner-Denver* and its progeny. *Id.* at 265. Nevertheless, the Court in *14 Penn Plaza* reaffirmed the core holding of *Gardner-Denver* that, when a CBA does not expressly cover statutory claims, a prior arbitration will not preclude subsequent litigation of those statutory claims. 556 U.S. at 264. As the Court explained in summarizing the *Gardner-Denver* line of cases: "Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions." *Id.* at 264 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991)).

Accordingly, *Gardner-Denver* remains good law and continues to permit a plaintiff to bring federal statutory claims in federal court even after his or her union submitted factually related claims to arbitrations conducted pursuant to a CBA, so long as the CBA does not expressly empower the arbitrators to decide statutory claims. *See Mathews*, 649 F.3d at 1205 (recognizing "[t]he continued vitality of *Gardner-Denver* in cases where the parties had not agreed to arbitrate statutory claims"); *Carson v. Giant Food*, 175 F.3d 325, 331 (4th Cir. 1999) (holding that when a CBA generally requires arbitration of all employment-related disputes but

does not does not explicitly reference the federal statute at issue, there is no waiver of the employee's right to litigate that statutory claim in a judicial forum).

Moreover, many courts have concluded that the holding of *Gardner-Denver* applies equally to claims brought under the FMLA, because in enacting the FMLA Congress intended to create individual rights that plaintiffs could vindicate in federal court. *See Siddiqua v. N.Y. State Dep't of Health*, 642 F. App'x 68, 71 n.2 (2d Cir. 2016); *Fitzgerald v. Shore Mem. Hosp.*, 92 F. Supp. 3d 214, 227 n.3 (D.N.J. 2015); *Ortega v. San Juan Coal Co.*, Civ. No. 12-0501 MV/RHS, 2013 WL 12116377, at *11 (D.N.M. Oct. 3, 2013) (collecting cases).

#### b. *Application of* Gardner-Denver *to Issue Preclusion*

The weight of the authority supports the proposition that *Gardner-Denver* and its progeny is not limited to *claim* preclusion, but also bars courts from applying *issue* preclusion to findings made in arbitration pursuant to a CBA, when that CBA does not expressly cover statutory claims. *See Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 549 (6th Cir. 2008) ("[I]f a plaintiff does not expressly waive her right to bring claims in federal court, a prior arbitration does not preclude us from reconsidering *all factual issues* underlying a statutory claim." (emphasis added)); *Siddiqua*, 642 F. App'x at 71 n.2 ("*Gardner–Denver* does not apply only to claim preclusion. It also prohibits a court from dismissing Siddiqua's FMLA claims by giving preclusive effect to findings of fact made by the Arbitrator[.]"); *Gautier*, 143 F. Supp. at 435–36 (concluding that *Gardner-Denver* and its progeny counsel against invoking issue preclusion); *Figueroa v. Garland*, Civ. No. 21-7849-GHW, 2022 WL 17539114, at *7 (S.D.N.Y. Dec. 6, 2022) ("Findings made in arbitration pursuant to a 'collective-bargaining agreement [that does] not cover statutory claims,' however, are not preclusive in later federal-court proceedings for relief under antidiscrimination statutes." (quoting *14 Penn Plaza*, 556 U.S. at 247) (alterations in

17

original)); *Harris v. Kansas City*, Civ. No. 18-2084-JAR, 2021 WL 794900, at *6 (D. Kan. Mar. 2, 2021) ("*Gardner-Denver* makes clear that the Court is not bound by the arbitrator's decision here and that it should not be given preclusive effect."); *Ortega*, 2013 WL 12116377, at *14 ("The holding of *Gardner-Denver* applies equally to bar application of the doctrine of collateral estoppel as it does to bar the doctrine of res judicata.").

The Fifth Circuit, on the contrary, has concluded that the *Gardner-Denver* line of cases "counsel against only *claim preclusion*, not issue preclusion" and that issue preclusion can sometimes properly attach to the fact findings of arbitrators in subsequent federal statutory litigation. *Grimes v. BNSF Ry. Co.*, 746 F.3d 184, 186–87 (5th Cir. 2014) (emphasis in original). This conclusion is at least questionable, given the Supreme Court's admonition that—when a CBA does not expressly address federal statutory claims—an employer's "legal theory of preclusion" will fail when it rests "on the doctrine of equitable estoppel and on themes of res judicata *and collateral estoppel* [*i.e.*, issue preclusion].'" *14 Penn Plaza*, 556 U.S. at 262 (quoting *Gardner-Denver*, 415 U.S. at 49 n.10) (emphasis added).

It does not appear that the Fourth Circuit has addressed the question of whether issue preclusion can apply to bar an FMLA plaintiff from relitigating facts found in prior arbitration mandated under a CBA. However, the reasoning of the courts concluding that issue preclusion is not appropriate in such circumstances is highly persuasive, and the Court adopts the approach reached in those cases. *See Gautier*, 143 F. Supp. 3d at 433–34 (adopting the "majority approach" not to apply issue preclusion to a plaintiff's disability discrimination claim when the CBA between the plaintiff's union and his employer did not compel arbitration of statutory claims). Respecting the bargain struck between a union and an employer means that the Court should not apply preclusive effect to arbitral factual findings pursuant to a CBA when, as here,

18

the union did not bargain away its members' rights to bring federal statutory claims in court. *See id.* at 434 ("Where a plaintiff-employee has not contracted away his right to seek relief under federal law—and has instead reserved the ability to vindicate his statutory rights in a judicial forum—the Supreme Court requires federal courts to independently review the relevant factual issues.").

For these reasons, the Court holds that under *Gardner-Denver* and *14 Penn Plaza*, federal courts may not apply issue preclusion to factual issues underlying a plaintiff's federal statutory claims, when the prior proceeding was an arbitration conducted pursuant to a CBA that did not expressly empower the arbitrators to decide those federal statutory claims.

### 3. *Issue Preclusion Analysis*

Even assuming *arguendo* that issue preclusion may sometimes be applicable to arbitral factual findings under a CBA that did not empower arbitrators to decide statutory claims, the Court concludes issue preclusion would not be proper in this case.

Before determining whether to apply issue preclusion to a prior proceeding, the Court must satisfy itself that the prior proceeding contained sufficient procedural safeguards to protect the litigants' rights. *Hare v. Simpson*, 621 F. App'x 748, 754 n.8 (4th Cir. 2015); *Grimes*, 746 F.3d at 188. Relevant factors include (1) whether the arbitral pleadings stated the issues clearly; (2) whether the arbitrators explained their findings in a detailed written opinion; (3) whether procedural differences in arbitration were such that they might produce a different result than had the claims proceeded in federal court; and (4) whether the arbitrators were experienced and disinterested. *Grimes*, 746 F.3d at 188.

As discussed above, in *Grimes*, the Fifth Circuit held that issue preclusion can properly apply to arbitral fact findings in the RLA context. But the Fifth Circuit went on to hold that issue

preclusion would not be appropriate under the particular facts of that case. 746 F.3d at 189–90. In *Grimes*, the defendant railroad company fired three workers after conducting internal investigations of alleged dishonesty. *Id.* at 186. Under the terms of the applicable CBA, the plaintiff's union appealed the internal investigation to the PLB. *Id.* The PLB found in favor of the company but reduced the discipline imposed on the plaintiff to an unpaid suspension. *Id.* When the plaintiff subsequently sued the employer in federal court, the district court granted summary judgment to the employer, on the grounds that the PLB's findings that the employee had been dishonest should be given issue-preclusive effect. *Id.* The Fifth Circuit reversed, holding that issue preclusion was not appropriate when:

(1) the hearing was conducted by the railroad; (2) the plaintiff was represented by the union rather than an attorney; (3) the termination decision was made by a railroad employee, not by an impartial fact finder such as a judge or jury; (4) the rules of evidence do not appear to have been controlling; (5) and most crucially, the PLB's affirmance was based solely on the record.

*Id.* at 189 (quotation omitted). Every single one of the factors present in *Grimes* applies to the facts of this case.

Turning first to CSX's internal investigations and hearings, this process was controlled by the employer, and the decision to impose discipline was made by the company. (Jones Decl. ¶¶ 9–11 (ECF No. 93-2 at 5–6).) It is not clear whether there was a single instance in which CSX's internal investigations and hearings resulted in a favorable outcome for an employee. Indeed, the only instances CSX identifies in which a hearing officer's decisions were overruled were when the hearing officer recommended no discipline be imposed. (*See* Drummond Dep. at 23–24 (ECF No. 92-1 at 24–25).) Employees were represented solely by a union representative and were typically not entitled to bring an attorney to the hearings. (Drummond Dep. at 13–14 (ECF No. 92-1 at 14–15).) There were no formal rules of evidence in place at the proceedings

20

and the hearing officers were CSX managers with no legal training. (*Id.* at 13–15 (ECF No. 92-1 at 14–16); Layne Dep. at 20:7–20:17 (ECF No. 93-9 at 13).) In short, CSX controlled every aspect of the internal investigations and CSX management—rather than a neutral third party—made the final decision about whether to impose discipline on an employee. The Court does not adopt the overheated and inappropriate rhetoric espoused by Plaintiffs that CSX charging officers "act[ed] as both prosecutor and judge,"[12] and that CSX's internal investigations were "crooked." (ECF No. 92 at 3, 14.) Nevertheless, the Court finds that CSX's internal investigative process created a pervasive structural risk of pro-employer bias.

Turning next to the arbitrations, it is undisputed that the arbitrator's review of facts was based solely on the record produced during CSX's internal investigation and hearings. (*See* ECF No. 92 at 14; ECF No. 93 at 16.) The arbitrators' written findings were formulaic and often nearly identical to each other, suggesting that the employees did not always get the individualized review to which they were entitled. Moreover, while the arbitrators did sometimes find in favor of the Plaintiffs, in general their review was highly deferential, requiring only that CSX produce "substantial evidence to support the discipline assessment," which the arbitrators defined "as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*See, e.g.*, Paulk Award at 7 (ECF No. 91-3 at 249).) The Court does not mean to suggest that the arbitrations were mere rubber stamps, but they were nevertheless inadequate to adjudicate the Plaintiffs' statutory claims.

___

[12] This allegation is flatly contradicted by the deposition to which Plaintiffs cite in support of their argument. In that deposition, Drummond explained that in internal CSX hearings there is both a "charging officer" (also known as a "company witness") who brings the accusation against the employee, and a "hearing officer" who decides whether the allegations are proven, rules on objections, and asks questions of witnesses. (Drummond Dep. at 10:17–11:13, 12:1–13:15 (ECF No. 92-1 at 11–14).) These are two different individuals, and the charging officer has no input on whether to find the allegations proven. (*Id.*)

21

Under such circumstances, applying issue preclusion to the arbitral fact-findings would be fundamentally unfair, because it would substantially deprive Plaintiffs of an adequate and neutral forum for adjudicating their FMLA claims. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 158 (2015) (stating that issue preclusion is inappropriate when "the procedures used in the first proceeding were fundamentally poor, cursory, or unfair"). The Fifth Circuit's discussion in *Grimes* applies with equal force to the facts of this case:

> [T]he investigation and hearings were conducted by the railroad. The actual arbitrators—the PLB—only reviewed the record from that investigation. Collateral estoppel was inappropriate because the procedures of the PLB did not afford Grimes the basic procedural protections of a judicial forum. The fact that a subsequent panel of neutral arbitrators reviewed the record of the internal investigation and hearing and concluded that the railroad had reached the correct result is not enough to insulate the underlying, employer-conducted proceedings from scrutiny.

746 F.3d at 188–89.

Courts routinely decline to apply issue preclusion to the factual findings of an arbitrator when the arbitrator's review was limited to the record generated by the employer's internal investigation or was otherwise procedurally deficient. *See Kulavic v. Chi. & Ill. Midland Ry. Co.*, 1 F.3d 507, 517 (7th Cir. 1993) (declining to apply issue preclusion to findings of the PLB when the PLB "was limited to reviewing the record created in the railroad-controlled investigative hearing"); *Graves v. Burlington N. & Santa Fe Ry. Co,*, 77 F. Supp. 2d 1215, 1219 (E.D. Okla. 1999) (declining to apply issue preclusion when the arbitrator's decision was based on a review of the record generated by the railroad's internal investigation and hearing); *Gunderson v. BNSF Ry. Co.*, Civ. No. 14-0223 (PJS/HB), 2015 WL 4545390, at *7 n.5 (D. Minn. July 28, 2015) (declining to apply issue preclusion when the PLB's review was limited to the railroad's internal investigation); *Thompson v. Norfolk S. Ry. Co.*, Civ. No. 13-1555-CC, 2015 WL 1509483, at *7–8 (N.D. Ga. Mar. 31, 2015) (same); *see also Ortega*, 2013 WL

12116377, at *14–15 (in an FMLA case, declining to apply issue preclusion to the findings of prior arbitration conducted pursuant to a CBA and collecting cases); *Webster v. Milwaukee Cnty.*, 731 F. Supp. 2d 837, 845 (E.D. Wis. 2010) (declining to apply issue preclusion to the findings of an earlier administrative proceeding because the prior proceeding had no authority to adjudicate an FMLA claim and because the prior proceeding accorded the employee procedural rights that "were far short [of] those that a litigant receives in a lawsuit"). The Court finds the reasoning in these cases persuasive, and agrees that issue preclusion is not appropriate in such circumstances.

Moreover, in addition to the procedural deficiencies, the arbitrators did not actually determine a key issue in the case, which is whether CSX's reason for firing the plaintiffs was pretextual. *See Adkins*, 70 F.4th at 790 (explaining that FMLA retaliation plaintiffs must show that "suspected dishonesty was [the employer's] actual reason for terminating the plaintiffs' employment"). As discussed above, the arbitrators upheld CSX's decision to discipline its employees whenever there was "substantial evidence" to support the company's contention that the employee had been dishonest in requesting FMLA leave (although the arbitrators sometimes reduced the severity of the discipline imposed). (*See, e.g.*, Allen Award at 3 (ECF No. 91-3 at 8); Barnett Award at 4 (ECF No. 91-3 at 14).) The problem is that it is entirely possible for it to be true *both* that there was "substantial evidence" to support CSX's decision to discipline the employee, *and* that the *actual* reason CSX imposed the discipline was nevertheless based on impermissible retaliation. *Cf. Ray v. Union Pac. R.R. Co.*, 971 F. Supp. 2d 869, 894 (S.D. Iowa 2013) (declining to grant summary judgment on issue preclusion grounds on the basis of the PLB's factual findings, because "even if Plaintiff's dishonesty in October 2009 was the primary and predominant basis for his discharge, this does not preclude the possibility that

23

[impermissible retaliation] could still have been *a* contributing factor in his discharge."). Here, it does not appear that the arbitrators considered the question of whether CSX's proffered reasons for terminating the Plaintiff were pretextual, and it is not apparent from the record whether Plaintiffs had any opportunity to present evidence on the question. Thus, summary judgment would not be appropriate.[13]

In conclusion, even assuming *arguendo* that issue preclusion can under certain circumstances be appropriately applied to arbitral fact-findings made pursuant to a CBA in a subsequent lawsuit asserting violations of federal statutory rights, CSX has failed to meet its burden of showing that issue preclusion is warranted on the facts of this case.

## IV.    CONCLUSION

For the foregoing reasons, a separate order will issue denying CSX's Motion for Summary Judgment.  (ECF No. 91.)

DATED this ___8___ day of May, 2024.

BY THE COURT:

James K. Bredar
United States District Judge

---

[13] The cases on which CSX relies in support of its argument for issue preclusion are distinguishable or unpersuasive. For instance, in *Perry v. American Airlines*, the district court held that issue preclusion barred a plaintiff from relitigating certain factual questions relating to the causes of his termination.  405 F. Supp. 2d 700, 707 (E.D. Va. 2005).  However, the court in *Perry* reached this conclusion in two sentences of analysis without any citation to legal authority and did not discuss any issues relating to potential procedural unfairness.  And in *Benjamin v. Traffic Executive Association Eastern Railroads*, the Second Circuit applied issue preclusion to the findings of an earlier arbitration panel, but noted that the procedures used in the arbitration were fair and did not prejudice the plaintiffs in any way, and observed that the arbitrator presented the issues "in a reasoned, detailed opinion." 869 F.2d 107, 110, 113 (2d Cir. 1989).  These characterizations do not hold for the arbitrations at issue here.